UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHARD D.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. 3:22-CV-5124-DWC

ORDER AFFIRMING DEFENDANT'S DECISION DENYING BENEFITS

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of the denial of his applications for disability insurance benefits. Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Rule MJR 13, the parties have consented to proceed before United States Magistrate Judge Christel.

BACKGROUND

Plaintiff filed for disability insurance benefits and supplemental security income on August 16, 2019, alleging disability beginning August 1, 2018. Administrative Record (AR) 18, 336-37, 344. His applications were denied initially and on reconsideration. AR 201-03, 210-16. On March 30, 2020 Plaintiff requested a rehearing (AR 217-18), and on August 4, 2020 an

Administrative Law Judge (ALJ) conducted a telephonic hearing at which Plaintiff was represented and testified (AR 62-110). On September 8, 2020, the ALJ found Plaintiff not disabled (AR 174-95), and on November 8, 2020, Plaintiff requested administrative review of that determination (AR 256-58). On January 22, 2021, the Appeals Council granted review and remanded the case for further proceedings. AR 196-200.

On July 8, 2021, a second telephonic hearing was held before an ALJ (AR 111-42 ) and on August 13, 2021 the ALJ again determined that Plaintiff was not disabled (AR 12-30). The Appeals Council denied Plaintiff's renewed request for review. On October 4, 2021, Plaintiff again requested administrative review (AR 329-33) and on January 29, 2022 the Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review (AR 1-6; 20 C.F.R. §§ 404.981, 416.1481).

## STANDARD

Pursuant to 42 U.S.C. § 405(g) this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). However, the Commissioner's decision must be affirmed if it is supported by substantial evidence and free of harmful legal error. 42 U.S.C. § 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.,* 574 F.3d 685, 690 (9th Cir. 2009). The U.S. Supreme Court describes it as "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). "It means—and

means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotations omitted).

## THE ALJ's FINDINGS

The ALJ found Plaintiff to suffer from the severe impairments of lumbar spine anterolisthesis with degenerative disc and joint disease, migraines, right cubital tunnel syndrome, post-traumatic stress disorder (PTSD), and major depressive disorder. AR 20.

The ALJ determined that Plaintiff had a residual functional capacity (RFC) to perform light work with additional restrictions, including: occasional crawling and occasional climbing of ladders, ropes, and scaffolds; frequent but not continuous handling and fingering bilaterally; occasional exposure to vibration, temperature and humidity extremes, bright light, and loud noise; the ability to understand, remember, and apply detailed but not complex instructions, not in a fast-paced production type environment; exposure to occasional workplace changes; and only occasional interaction with the general public and co-workers. AR 24.

With the assistance of vocational expert testimony, the ALJ found that although Plaintiff could no longer perform his past relevant work as a medic/ paramedic (AR 31) he nevertheless remained capable of performing a significant number of jobs in the national and state economies, such as Cleaning/housekeeping, inspector and hand packager, and routing clerk, meaning he was not disabled by Social Security Administration standards. AR 32-33.

## DISCUSSION

Plaintiff argues the ALJ erred by improperly rejecting his testimony, lay witness testimony, and some of the medical evidence, leading to an erroneous RFC and step five non-disability determination. *See generally* Dkt. 14. The Commissioner disagrees. *See generally* Dkt. 17. For the reasons that follow the Court concurs with the Commissioner.

I.      Plaintiff's Credibility

Plaintiff argues the ALJ improperly rejected his testimony.

A.     Credibility Regulations

"The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of symptom." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation and internal quotation marks omitted). "If the claimant meets this threshold and there is no affirmative evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id*.

When assessing a claimant's credibility the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may also consider if a claimant's complaints are "inconsistent with clinical observations[.]" *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998).

However, affirmative evidence of symptom magnification, or malingering, relieves an ALJ from the burden of providing specific, clear, and convincing reasons for discounting a claimant's testimony. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (upholding finding where ALJ "pointed to affirmative evidence of malingering").

Questions of credibility are solely within the control of the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility

determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *Id*. at 579.

B.  Analysis

Plaintiff contends the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective reports regarding cubital tunnel syndrome and PTSD. Dkt. 14 at 15-18. Plaintiff does not, however, contest the ALJ's reasons for discounting his subjective reporting regarding his back pain and headaches.[1] Also absent from Plaintiff's list of objections is any argument that the ALJ erred in assessing Plaintiff's ambitious daily activity schedule. The ALJ found:

> With regard to activities of daily living, the claimant testified he lives in a house with his wife and a minor daughter, walks, waters his yard, feeds his dogs, does not socialize regularly, leaves the stove on, and does not play golf. The claimant reported in **April of 2019 that he was looking for work** (Exhibit 4F at 152). In November of 2019, he reported that he goes grocery shopping with his wife and avoids crowds, helps his wife with cooking, and that his wife manages the money (Exhibit 5F at 4). **He reported in January of 2020 that he does household chores, exercises**, and spends time with his wife and children (Exhibit 9F at 12). In March 2020 he reported no problems with personal care, that he can climb a flight of stairs slowly with knee pain, that he goes shopping, does some yard work, and that he does some cleaning, cooking, dishwashing, vacuuming, and laundry (Exhibit 10F). He reported walking his dogs for exercise in July of 2020 (Exhibit 15F at 8). In his function report, he indicated he **goes to the gym regularly, cares for his 11-year-old daughter and takes her to school, does housework, takes care of dogs, makes simple meals, drives, and shops** (Exhibit 9E). Recent treatment notes from February 2021 indicate that the **claimant goes jogging** (Exhibit 20F/6).

AR 25 (emphasis added).

---

[1] At the hearings and throughout the record, Plaintiff reported he was unable to work due to lumbar spine anterolisthesis with degenerative disc and joint disease, migraines, right cubital tunnel syndrome, PTSD, and major depressive disorder. AR 25.

The Court bears this assessment in mind as it addresses the objections Plaintiff does lodge, because, as the Commissioner points out, "Even where [a claimant's activities of daily living] suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Dkt. 17 at 8 (citing *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012 and *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021)(routine activities such as playing video games, using public transportation, and preparing meals may undercut a claimant's testimony).

Also relevant to the consideration of Plaintiff's arguments is the fact the ALJ found major inconsistencies between Plaintiff's self-reports and the treatment he engaged in, writing:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because records reflect **conservative treatment with no physical therapy, no spinal injections, and no consultations for surgery.** The claimant **did not have a prescription for pain medication in March of 2020, inconsistent with the degree of limitation alleged** (Exhibit 10F). Physical examinations revealed the claimant to have a non-antalgic gait, **5/5 grip strength**, normal heel to toe walking, normal tandem walking, and full extremity strength (Exhibit 10F). **Likewise, records reflect use of over the counter medications for headaches prior to 2020**, inconsistent with the severity of symptoms reported (Exhibit 4F at 120). The claimant continues to report breakthrough migraine headaches; **however, he has not required any emergent or urgent care for this condition …**

AR 28 (emphasis added). The amount and type of treatment is an important indicator of the intensity and persistence of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). Thus, the ALJ concluded that Plaintiff's mostly conservative treatment for several of the conditions he listed as disabling called Plaintiff's testimony into question. This conclusion is legally sound and supported by substantial evidence. 20 C.F.R. § 404.1529(c)(3)(iv)(ALJs consider treatment and relief when evaluating a claimant's symptoms).

The ALJ may also discredit a Plaintiff's subjective reporting when medical treatment successfully relieves a claimant's symptoms. *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir.

2017) (*citing* 20 C.F.R. § 404.1520a(c)(1)). Such was the case regarding Plaintiff's cubital tunnel syndrome, about which the ALJ wrote:

> The claimant is also diagnosed with cubital tunnel syndrome (Exhibit 16F at 112). Treatment notes reflect **occasional complaints of hand pain and numbness, but normal examinations with a normal range of motion, 5/5 grip strength, and no tenderness or swelling** (Exhibit 2F at 58, 3F at 54- 55). One exam noted decreased sensation in his fourth and fifth fingertips bilaterally (Exhibit 10F at 4). A nerve conduction study conducted in **March 2018 was abnormal but required repeat testing that was not completed** (Exhibit 3F at 59, 4F at 149). This study also showed slowing of the nerve conduction velocity across the elbow, which was consistent with cubital tunnel syndrome, **though not diagnosed as such** (Exhibit 16F at 255). On April 1, 2018, Stephen Goldman, M.D. noted that **the claimant's range of motion of his right elbow was abnormal, and that the claimant experienced pain with lifting and bending** (Exhibit 16F, page 15). In October 2020 the claimant reported numbness, electric shocks, and pins and needles sensation in his right and small fingers of the right hand (Exhibit 18F at 23). He noted that he was experiencing **limited symptom relief with gabapentin**. An EMG exam demonstrated non-recordable right ulnar nerve onset and non-recordable right median nerve onset latency, peak latency, and amplitude at the writs. **Physical exams showed normal range of motion of all fingers and wrist with subjectively decreased sensation** over the ulnar nerve and a positive Tinel's Phalen's and Darkan's at the cubital tunnel. Cubital tunnel release surgery was recommended and in January 2021 the claimant underwent cubital tunnel release (Exhibit 19F at 31). Following this procedure, the **claimant was noted to heal well with the claimant noting only two weeks following surgery much improved pain and that he no longer required pain medication** (Exhibit 21F at 53-54). Exams showed **full elbow range of motion** with subjectively stable and decreased sensation in the ulnar nerve distribution. **Physicians noted that there were no concerns regarding the claimant's healing and that he did not require any additional hand surgery follow up care.**

AR 26-27 (emphasis added).

In his amended reply Plaintiff insists that the ALJ "accepted all of the lead up to need for surgery" so he also should have accepted that "Plaintiff would not have been able to reach, handle, finger frequently for 50% of the day, from the onset of April 1, 2018, to sometime after surgery in January 2021 …". Dkt. 19 at 2. This Court does not concur with Plaintiff that the ALJ found Plaintiff's complaints related to cubital tunnel syndrome were fully reliable, before or after the surgery. As noted above, and also discussed in more detail below, Plaintiff was never

actually diagnosed with cubital tunnel syndrome—he just told the VA that he was. *See* AR 625. The Court also does not find support in the record for Plaintiff argument that the VA found he had "significant reduction in earning ability due to right and left elbow arthritis; right and left wrist traumatic arthritis; right cubital tunnel syndrome; and cervical strain." Dkt. 19 at 2 (citing AR 518-23). The August 1, 2018 VA determination he bases this statement upon found cubital tunnel syndrome was 10% disabling, and notably found Plaintiff's headaches (about which the ALJ found Plaintiff was not credible) were 50% disabling. AR 542. In any event, as the ALJ noted, the VA's disability determinations "are completely different that those used by the Social Security Administration; therefore, the undersigned is not bound by the findings set forth in the claimant's Rating Decision (20 CFR 404.1504, 404.1527(f)). AR 31.

The Court finds the initial discussion of the ALJ's assessment regarding Plaintiff's activities of daily living especially relevant to a review of Plaintiff's objections regarding his mental impairments. The fact Plaintiff was "looking for work" during the relevant period of time, as the ALJ noted (AR 25) reveals more about the degree to which PTSD actually impaired Plaintiff's functional capacity than any of his statements, particularly where at least one of the jobs Plaintiff is noted to have applied for during this time was to be a law enforcement officer with the King County Sheriff's Department. *See* AR 1930.

Regarding his mental impairments the ALJ found:

> In terms of the claimant's mental impairments, the claimant was diagnosed with PTSD and major depressive disorder (Exhibit 5F at 5). **He reported no history of suicide attempts or psychiatric hospitalizations.** Records **reflect limited mental health treatment and prescriptions for trazodone, citalopram, bupropion, and prazosin** (Exhibit 2F at 22). Records indicate he participated in therapy in late 2017 (Exhibit 3F). He was taking trazodone, citalopram, bupropion, and prazosin in late 2018 (Exhibit 2F at 22). He reported doing okay with PTSD in April of 2019 (Exhibit 4F at 152). The claimant attended a consultative examination in November 2019 where he reported experiencing PTSD symptoms including flashbacks, anxiety, depression, hypervigilance, difficulty with memory and focusing, and

nightmares (Exhibit 5F). **He reported that his medications helped his condition, however, therapy provided no symptom relief.** The examiner, Dr. Rogers, noted that he was groomed, appropriately dressed, and tired with an okay mood and consistent affect, weak immediate recall and recent memory, and weak concentration.

In January of 2020, the claimant complained of difficulty with memory and concentration, worsening symptoms of PTSD, and poor sleep (Exhibit 9F at 11-12). An exam noted he was alert, oriented, adequately groomed, tearful, and cooperative, with a concerned mood, and appropriate affect (Exhibit 9F at 15). In March of 2020, he was noted as alert and cooperative, appropriately dressed and groomed, with normal speech, full affect, good insight, and fair judgment, but an anxious and depressed mood (Exhibit 13F at 4-5). **He complained of difficulty with crowded places, nightmares, flashbacks, anxiety, and anger problems in June** (Exhibit 14F at 2). An exam noted he was alert and cooperative, with a dysphoric mood, normal speech, and good insight and judgment (Exhibit 14F at 3). In July 2020, the claimant attended a consultative examination where he reported symptoms of PTSD including flashbacks, nightmares, and depression (Exhibit 15F). **He endorsed decreased concentration and energy and noted that he had panic attacks.** Mental status exams revealed the claimant to be fully oriented with a cooperative behavior and logical and coherent thought processes. He could recall one of four objects after a delay, perform serial sevens with one error, and recall five digits forward and four backward. In January 2021 mental status exams revealed the claimant to be alert and attentive with cooperative behavior, a euthymic mood, normal speech, and organized thought processes (Exhibit 19F at18). The claimant had good insight and judgment and denied suicidal or homicidal ideation. **The claimant was continued with [individual] and group therapy for PTSD and depression symptoms where therapy records indicate that the claimant made good progress towards goals** (Exhibit 22F at 6, 8, 11, 21F at 11). **He noted that he experienced symptom improvement with therapy and medications** (Exhibit 21F). Mental status examination continued to reveal benign findings with notes form [sic] June 2021 showing the claimant to have organized and goal directed thought processes, no evidence of excessive agitation, no psychotic symptoms, and a euthymic mood (Exhibit 22F at 3-4).

AR 27.

Plaintiff objects to this assessment for two reasons. First, he somewhat incongruously contends that his "mental medicative regime was not conservative" as it included "Bupropion, Escitalopram, Buspirone, Hydroxyzine, Prazosin, Trazodone (Tr. 1361)." Dkt. 14 at 17. The ALJ did not state that his psychotropic medical regime was "conservative", he stated that these

medications[2] "helped his condition". AR 27. However, the immediately preceding sentence in Plaintiff's Opening Brief states, "The need for strong pain medications indicated that Plaintiff's treating sources believed his pain claims and gave them credence with their ongoing treatment." Dkt. 14 at 17. Thus, Plaintiff may have misconstrued the ALJ's conclusion that his pain-related treatment was conservative to also apply to his mental-impairment-related medication. AR 28. In any event, Plaintiff does not direct the Court to any record of the "strong pain medication" to which he refers and the Court finds no merit to this objection.

Second, Plaintiff accuses the ALJ of "cherry-picking among clinical findings" in the record to conclude that his PTSD was not totally disabling. Dkt. 14 at 17. What the ALJ should have done, according to Plaintiff, was defer to the "PTSD expert" Dr. Hopfenbeck (discussed further, below), who opined that the combination of Plaintiffs headaches and PTSD would prevent him from working. *Id.*; AR 1365.

For all the reasons discussed above and below, the Court finds the ALJ's interpretation of the record regarding Plaintiff's mental impairments was rational and supported by substantial evidence. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir.1995))("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." ).

II. Lay Witness Testimony

Plaintiff contends the ALJ committed harmful error by failing to provide any reason to reject the testimony of Plaintiff's wife.

---

[2] Bupropion is for depression, Escitalopram is for depression, Busprione is for anxiety, Hydroxyzine is for anxiety, Prazosin is for night terrors, and Trazodone is for insomnia. *See* AR 1129.

A. <u>Lay Witness Regulations</u>

The ALJ is required to provide a germane reason to reject lay witness testimony. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

B. <u>Analysis</u>

Plaintiff's wife completed a third-party function report dated September 26, 2019 on which she indicated that Plaintiff suffers from sleep deprivation, nightmares, and crippling anxiety (AR 404), and that he has back and knee pain, suffers from tension headaches, and "often sleeps during the day" (AR 405). She further confirmed Plaintiff's self-reports that he goes to the gym every morning at 3AM, takes his daughter to school (*id*.), prepares meals, and helps with various household chores (AR 406). She stated that Plaintiff's "knees and elbows [and] lack of feeling in his fingers" interfere with his household duties (AR 407), but he is able to shop in stores, drive, and handle money (*id*.). Finally, she listed his "hobbies and interests" as "watching sporting events, attending concerts, watching tv, fishing, hiking, [and] going to the movies." AR 408.

The ALJ addressed this third-party report, stating, "While third party [nonmedical] statements … can be helpful … the undersigned need not articulate how this evidence was considered in terms of persuasiveness." AR 31.

Plaintiff argues the ALJ's rejection of this testimony for no reason necessitates a finding that Plaintiff is disabled, and that "benefits [should be] paid outright." Dkt. 14 at 15.

The ALJ did not state that he rejected Plaintiff's wife's testimony. The Court concurs with the Commissioner that Plaintiff's wife largely endorsed the same limitations as Plaintiff himself, and therefore this evidence was not particularly probative. To the extent her testimony is probative, the Court finds it does not enure to Plaintiff's benefit as she described a more robust

list of activities of daily living than Plaintiff himself, who did not admit to engaging in hiking and fishing, or to attending concerts. Plaintiff's wife also revealed that Plaintiff sleeps during the day, which contradicts Plaintiff's claim of the same date that he only gets 2-3 hours of sleep. AR 404-409, 413.

In sum, even if the ALJ had erroneously discredited this third-party report, crediting it "as true" would not result in an immediate award of benefits because it would not require the ALJ to find Plaintiff disabled. *Trevizo v. Berryhill*, 871 F.3d 664, 682-83 (*quoting Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)(applying Ninth Circuit's three-step analysis for determining when to remand for a direct award of benefits).

### III.  Medical Evidence and the RFC

Plaintiff argues the ALJ wrongly rejected medical evidence regarding Plaintiff's "handling and fingering" ability, his reaching ability, and his PTSD.

#### A.  Medical Evidence Regulations

The regulations regarding evaluation of medical evidence were amended for claims protectively filed on or after March 27, 2017, such as this one. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c). In the new regulations, the Commissioner rescinded Social Security Regulation (SSR) 06-03p and broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263. The Commissioner also clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 F. Reg. 8544; 82 F. Reg. 15263.

Additionally, the new regulations state the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017); *see also* 20 C.F.R. §§ 404.1520c (a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. §§ 404.152c(c); 416.920c(c). The most important factors are supportability and consistency. 20 C.F.R. §§ 404.152c(a), (b)(2); 416.920c(a), (b)(2).

Although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion[3], the ALJ must still "articulate how [he] considered the medical opinions" and "how persuasive [he] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a), (b)(1); 416.920c(a), (b)(1). The ALJ is specifically required to "explain how [he] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

The supportability factor requires the ALJ to consider the relevance of the objective medical evidence and the supporting explanations presented by the medical source to justify their opinion. 20 C.F.R. § 416.920c(c)(1). Inversely, consistency involves a consideration of how consistent a medical opinion is with the other record evidence. 20 C.F.R. § 416.920c(c)(2).

///

---

[3] The Ninth Circuit recently held that "[t]he revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant." *Woods v. Kijakazi*, 32 F. 4th 785, 787 (9th Cir. 2022), *petition for rehearing pending*. As a result, the Ninth Circuit concluded that the revised regulations displaced the longstanding case law requiring an ALJ to provide "specific and legitimate" reasons for rejecting a contracted physician's opinion or "clear and convincing" reasons for discrediting an uncontradicted physician's opinion. *Id.*

B. <u>Analysis</u>

i. <u>"Handling and Fingering"</u>

Plaintiff first argues that "based on the evidence the ALJ accepted" he should have limited Plaintiff's RFC regarding handling and fingering with the right upper extremity to 50% of the workday as he would not have been able to do more than that from the onset of April 1, 2018 to sometime after his surgery in January 2021, due to pain, numbness, and loss of range of motion in the right upper extremity." Dkt. 14 at 5-6. Plaintiff concludes, without supporting authority, that the ALJ erred by not employing the services of a medical expert on this matter "because [Plaintiff's] recovery from surgery was dated a few months before the [ALJ's] decision…." *Id.* at 6.

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001) (internal citation omitted). Neither was the case here, as the record was adequate to allow for a complete evaluation of Plaintiff's handling and fingering capacity.

The ALJ found that in March 2018 Plaintiff had a nerve conduction study performed, and although it came back abnormal the study noted that the abnormal results may have been due to Plaintiff's hands being cold. AR 26, 686. The abnormal results "required repeat testing that was not completed" because Plaintiff did not return for the requested repeat study. *Id.* (*citing* AR 686, 917).

The ALJ noted Veterans Affairs (VA) records indicating Plaintiff had been diagnosed with bilateral cubital tunnel syndrome as of March 2018 (notwithstanding the incomplete nerve

conduction study (AR 26, 1496)), but later noted in October 2018 that this was an unsubstantiated finding, explaining:

> Veteran states that he has had EMGs for the right side, but he states that he does not know the results. **There is no evidence of the EMGs being performed in his medical** records. There is no evidence that he was given a brace for the left elbow or had any evaluation for a left cubital tunnel syndrome. There is evidence that he was given a brace for the right elbow in Oct 2017. **He was given a consult to Occupational therapy, however, it appears that he never went for that evaluation**. Clinical exam today was within normal limits.

AR 625 (emphasis added). The ALJ also found that VA medical records showed Plaintiff maintained "5/5" strength throughout (AR 1497), had no signs of atrophy despite allegations of difficulty using his hands (AR 1498), and his reflexes were "normal" throughout. *Id*. Thus, the VA concluded that Plaintiff's condition did not impact his ability to work. AR 1506.

Finally, the ALJ noted that Plaintiff underwent left ulnar nerve release surgery in 2021 (AR 26, 1792-93) after which he reported that "his pain is much improved and he is no longer requiring pain medication" (AR 1955). Plaintiff's providers had "no concerns" regarding his healing and noted that he did not require any follow-up hand surgery. AR 27, 1956.

Although Plaintiff does not concur with the ALJ's resolution of this objective medical evidence—which resulting in an RFC limitation of no more than "frequent but not continuous handling and fingering bilaterally"—the Court finds it to be rational. *See* AR 28; *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995))("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." ).

    ii.    <u>"Reaching"</u>

On March 6, 2020, Guito Wingfield, M.D. (Wingfield) performed a physical examination of Plaintiff. AR 1128-32. The ALJ summarized Wingfield's opinions as follows:

> Dr. Wingfield opined that the claimant is limited to light work with limited climbing, frequent balancing, stooping, kneeling, crouching, and crawling, and that **he had decreased reaching bilaterally**. Dr. Winfield [sic] opined that the claimant could handle, finger, and feel, and that he should avoid hazards and excessive noise. The undersigned finds limitations to light work with limited climbing and crawling persuasive, as they are supported by his examination and consistent with the medical record including the opinions of the State agency reviewers. Dr. Wingfield noted [] that the claimant had a non-antalgic gait, 5/5 grip strength, normal heel to toe walking, normal tandem walking, a modified squat due to knee pain, no atrophy or spasms, and 5/5 strength in extremities, supporting his opinion. **However, treatment notes reflect no ongoing complaints of shoulder pain, no observed limitations in range of motion, and no ongoing treatment.** As such, Dr. Winfield's findings that the claimant was limited in reaching are not supported with the record and are not persuasive."

AR 29-30 (emphasis added).

Plaintiff urges the Court to conclude that the ALJ erred in rejecting Wingfield opined "reaching" limitation because his opinion is, in fact, strongly supported by Plaintiff's decreased sensation in his outer fingertips, reduced reflexes, and had surgery for cubital tunnel syndrome. Dkt. 14 at 8-9.

This argument misconstrues Wingfield, who did not base his reaching restriction opinion on any of these things. Wingfield expressly stated his reaching restriction was "due to decreased range of motion in his left shoulder." *See* AR 1132. Therefore, this Court finds no merit to Plaintiff's objection, and concurs with the Commissioner that the ALJ's rejection of Wingfield's "reaching" limitation was legally sufficient and based upon substantial record evidence.

iii.    PTSD

On July 10, 2020, Psychiatrist James Hopfenbeck, M.D. (Hopfenbeck) was retained by Plaintiff's attorney to review records and interview Plaintiff about his mental impairments. AR 1356-84. Hopfenbeck opined that Plaintiff was unable to work as "his severe PTSD and frequent migraine headaches would be a strong barrier to being able to maintain focus, relate to others, or otherwise be accommodated", that significant improvement was highly unlikely, and that he met

the requirements for PTSD to qualify as a listed impairment, with marked limitations in understanding, remembering, and applying information and adapting or managing oneself, extreme limitations in interacting with others, and concentrating, persisting or maintaining pace, and marginal adjustment. AR 30, 1364-69.

The ALJ found Hopfenbeck's opinion "unpersuasive, as it is not supported by his examination and is inconsistent with medical records." AR 30, 1357-69. The ALJ pointed out, for instance, that during Hopfenbeck's examination Plaintiff was able to perform serial sevens with only one error and could repeat five digits forward and four backward, which was inconsistent Hopfenbeck's opinion that Plaintiff had extreme limitations with concentration and persistence. AR 30, 1367.

Plaintiff objects to this finding, contending the ALJ "cherrypicked" from the record to find inconsistencies. Dkt. 14 at 12. The Court certainly appreciates that the ALJ is required to consider the record as a whole, and must not isolate certain facts without considering their context. *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (an ALJ must not "cherry-pick" certain observations without considering their context); *see also Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (the Court "cannot affirm … 'simply by isolating a specific quantum of supporting evidence,' but 'must consider the record as a whole, weighing both evidence that supports and evidence that detracts'). However, Plaintiff himself focusses on selective information and does not address multiple clear and convincing reasons the ALJ cited for rejecting his subjective reporting, and many inconsistent and unsupported aspects of the medical opinions he claims were wrongly rejected. *See e.g., White v. Comm'r Soc. Sec.*, 572 F.3d 272, 285 (6th Cir. 2009) ("The problem with

[plaintiff's] cherry picking argument, however is that it cuts both ways. She too cherry picks data.").

In sum, the Court finds no merit to Plaintiff's argument that the ALJ wrongly rejected Hopfenbeck's opinion.

## CONCLUSION

In conclusion, this Court finds the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence. Accordingly, the Commissioner's final decision is affirmed.

Dated this 20th day of September, 2022.

David W. Christel
United States Magistrate Judge